Milo Steven Marsden (Utah State Bar No. 4879)
Maryann Bauhs (Utah State Bar No. 17196)
**DORSEY & WHITNEY LLP**
111 South Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Email: marsden.steve@dorsey.com
          bauhs.maryann@dorsey.com

Sharon Schneier (*Pro Hac Vice*)
Nimra H. Azmi (*Pro Hac Vice*)
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel:    (212) 489-8230
Email: sharonschneier@dwt.com
          nimraazmi@dwt.com

Sean Sullivan (*Pro Hac Vice*)
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel.: 213.633.8644
Email: seansullivan@dwt.com

*Attorneys for Defendant The Economist Newspaper NA, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KLAY ANDERSON and JOSE URRUTIA, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>v.<br><br>THE ECONOMIST NEWSPAPER NA, INC.<br><br>          Defendant. | **DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Case No. 2:23-cv-00878<br><br>The Honorable Howard C. Nielson, Jr.<br>Magistrate Judge Daphne A. Oberg<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

Plaintiff Klay Anderson's ("Plaintiff")[1] Opposition ("Opp.") to Defendant TEN's Motion to Dismiss ("Motion" or "Mot.") confirms the persistent legal deficiencies in his putative class action complaint for a purported violation of Utah's NISNPIA.[2]

---

[1] Co-plaintiff Jose Urrutia has not opposed TEN's motion to compel arbitration and acknowledges that he should be dropped from this action. Opp. at n.1.

[2] This Reply brief uses the same abbreviations as Defendant's Motion.

Plaintiff acknowledges that TEN does not have a place of business in Utah and does not dispute that the airport kiosk, which is the basis for TEN's connection to the state, was closed *before* he filed the Amended Complaint. The Amended Complaint contains no specific allegations that TEN purportedly disclosed his information. Plaintiff nevertheless contends that these deficiencies should not doom his NISNPA claim because the Court is required to accept false and/or formulaic allegations as true even if they have no foundation in established facts. The pleading rules are not toothless and Plaintiff cannot offer conclusions that are not just wholly unsupported but are completely wrong.

Plaintiff does not seriously refute that he has pled only a statutory harm which does not have a common law analogue. Under Supreme Court and Tenth Circuit precedent, mere statutory harm is insufficient to establish Article III standing. Finally, relying on a single, non-binding case, Plaintiff contends that the NISNPIA class action bar is procedural, not substantive. In doing so, he ignores how intertwined the NISNPIA's class action bar is with the statute's substantive rights and remedies.

The Amended Complaint should be dismissed.

## ARGUMENT

### I.   PLAINTIFF'S NISNPIA CLAIM FAILS ON ITS FACE

#### A.   Plaintiff's NISNPIA Claim Cannot Survive Because Plaintiff Concedes that TEN Does Not Have a Place of Business in Utah.

As set forth in its Motion to Dismiss, TEN is not "domiciled" in Utah and does not have a "place of business" (principal or otherwise) there. (Mot. at 3).[3] As such, the NISNPIA—which

---

[3] Plaintiff is incorrect that the legislative history is unhelpful on whether the NISNPIA applies only to entities with "principal" places of business in Utah (*i.e.*, domiciliaries) or to non-principal places of business as well. *See* Opp. at 21-22. Rep. Aagard's statements in the legislative history make clear, in response to a direct question about the application of the statute to national companies, that the NISNPIA is intended to apply *only* to Utah companies "domiciled" in Utah, *i.e.,* with their

only applies to companies with Utah places of business, U.C.A. § 13-37-102(2)(a)—cannot apply to it.  *See* Mot. at 11-12.  In his Opposition, Plaintiff does not dispute that TEN does not have a place of business in Utah or that Concourse C of the Salt Lake City Airport was closed in November 2020 or that the identified kiosk was neither owned nor operated by TEN.  *See* Arnot Decl. ¶¶ 9, 10.  Instead, Plaintiff offers two arguments as to why the Utah statute nevertheless applies here.  Neither is persuasive.

*First*, Plaintiff claims TEN had a kiosk at Concourse C during the "relevant statutory period," which Plaintiff submits started on December 5, 2020, three years before the filing of the original complaint in this action.  Opp. at 23.[4]  Even if this Court were to accept Plaintiff's limitations period, the kiosk, which is Plaintiff's sole basis for applying the statute to TEN, had *closed* by November 2020—*i.e.*, before Plaintiff's claimed statutory period.  *See* Mot. n.7.  Indeed, the kiosk was removed from the Salt Lake City Airport's website by *at least* December 2, 2020—three days before Plaintiff's identified statutory period began.[5]  *See* Arnot Decl. Ex. A.  Accordingly, the NISNPIA cannot apply to TEN because it did not have a place of business in Utah.  The Amended Complaint can be dismissed on that basis alone.

*Second*, Plaintiff argues that the Court should accept his false allegations as true or at least allow him to proceed with discovery.  *See* Opp. at 21-23.  Implausible allegations do not "satisfy the pleading standard."  *Sherman v. Klenke*, 653 F. App'x 580, 590 (10th Cir. 2016).  The Court

---

principal place of business in the state. H.B. 0040S01 Legislative History at-49:41—to-49:25. In any event, this action does not hinge on whether the NISNPIA applies to any place of business or solely principal places of business because TEN has *neither* in Utah.

[4] Defendant disputes that the relevant statutory period is three years.  Because the NISNPIA is a penalty statute, it is subject to U.C.A. § 78B-2-302's one-year limitations period. *See* Mot. n. 10.

[5] This Court may take judicial notice of a website's contents.  *See Labertew v. WinRed, Inc.*, No. 2:21-CV-555-TC, 2022 WL 1568924, at *7 (D. Utah May 18, 2022) (courts can "take judicial notice of factual information found on the world wide web.").

need not accept allegations that are "demonstrably false," and Plaintiff offers *no* argument in Opposition that allegations about TEN's alleged place of business in Utah have the slightest merit. *Cannon v. PNC Bank*, N.A., No. 2-15-CV-00131-BSJ, 2016 WL 9779290, at *2 (D. Utah Aug. 31, 2016) (quoting *Jacobsen v. Bank of Am., N.A.*, No. 3:09-cv-00077, 2010 WL 5140686, *3 (W.D. Va. Dec. 13, 2010)).  Where, as here, allegations "have little or no basis in fact" and are refuted by matters the Court can consider, it should dismiss the Amended Complaint.  *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (a court need not accept as true a "complaint's factual allegations insofar as they contradict…matters subject to judicial notice"); *see also Kennedy v. Peele*, 552 F. App'x 787, 792 (10th Cir. 2014); *Hafen v. Carter*, 274 F. App'x 701, 703 (10th Cir. 2008).

Here, the actual facts are that Concourse C (the site of the alleged *Economist*-branded kiosk)—was closed in November 2020.  These undisputed facts rebut Plaintiff's ill-founded allegations that TEN has a place of business in Utah.  Plaintiff's NISNPIA claim fails.

### B.      The NISNPIA Claim Is Time-Barred.

As stated in TEN's Opening Brief, Plaintiff's NISNPIA claim must also be dismissed because it is time-barred.  Mot. at 13 n.10.  Now, the Opposition adopts a three-year limitations period for a NISNPIA claim and confirms that even by Plaintiff's own terms, his claim is time-barred.  Plaintiff does not disagree that he last subscribed to *The Economist* on October 19, 2019. *See* Mot. n.10; Arnot Decl. ¶ 30.  As relevant here, a violation of the NISNPIA occurs when a commercial entity does not "provide the notice described in this Section" when it "enters into a consumer transaction with [a] person" and "as a result…obtains the nonpublic personal information …"  U.C.A § 13-37-201(1)(a)(i) and (ii).  Accordingly, Plaintiff's NISNPIA claim accrued and the limitations period began to run on October 19, 2019, the day Plaintiff last subscribed to *The Economist* and he purportedly did not receive the requisite notice.  *See*

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 106-07 (2013) (citation omitted) (the date of accrual runs beginning "when the plaintiff can file suit and obtain relief."). While Plaintiff now argues that the relevant statutory period for a NISNPIA claim is three years, Opp. at 23, the original complaint in this action was filed on December 5, 2023. That is *more than four years* after Plaintiff's NISNPIA cause of action accrued and *one year beyond* even Plaintiff's purported limitations period. By Plaintiff's admission, his NISNPIA claim is untimely. It must be dismissed.

### C.    Plaintiff Has Failed to Offer Any Non-Speculative Allegations of Disclosure.

Plaintiff has not plausibly pled that TEN disclosed his information but instead offers only boilerplate allegations. Plaintiff claims that his allegations about the generic categories of entities to which TEN allegedly disclosed his information satisfy Rule 8. Opp. at 24. But Plaintiff's laundry list of vague entities like "data aggregators and appenders," AC ¶¶ 1, 5, 11, 16, 50, fails to, *inter alia*, name a specific actual company or dates of purported disclosure. These allegations constitute nothing more than "naked assertion[s]" and "labels" that cannot state an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Plaintiff relies on inapposite and out-of-circuit cases dealing with different statutes to support his contention that simply providing the NextMark card is enough to plausibly allege improper disclosure under the Utah statute. Opp. at 25. But the NextMark card does *not* show that TEN actually shared his private information through this mailing list, that NextMark even has his information, or that NextMark then disclosed it to any third parties. Plaintiff's pleadings here are woefully devoid of facts and his conclusory speculation cannot save this case from dismissal. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281-82 (10th Cir. 2021) (affirming dismissal where complaint "spins a wide-reaching story" but "does little to support this highly conclusory story with specific facts").

## II.     THIS CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

### A.     Plaintiff Cannot Demonstrate Article III Standing.

Plaintiff has not met his burden of pleading Article III standing and as such, this action should be dismissed for lack of subject matter jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Plaintiff's argument for Article III standing ignores Tenth Circuit precedent and does not change the fact that he claims only a bare statutory violation.

Plaintiff has claimed only a violation of the NISNPIA.  AC ¶ 7; *see also id.* ¶¶ 61, 80.  In his Opposition Plaintiff reiterates that he is seeking only to vindicate "NISNPIA created concrete privacy interests."  Opp. at 5.  The Amended Complaint runs afoul of *Spokeo, Inc. v. Robins*, where the Supreme Court held that "[A] bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  578 U.S. 330, 341 (2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Here, Plaintiff has claimed no more than the violation of a state statute, and under Supreme Court and Tenth Circuit precedent, that cannot establish standing.

In a misguided attempt to distinguish *Shields v. Pro. Bureau of Collections of Maryland, Inc.* 55 F.4th 823 (10th Cir. 2022), Plaintiff contends that the case is inapplicable because it addressed disclosure to a single third party, whereas he has alleged that TEN "offered to sell" Plaintiff's information to "anyone willing to purchase it" and that TEN "sold such information to numerous third parties."  Opp. at 9.  Plaintiff misstates *Shields*.  In that case, the Tenth Circuit noted that "[I]t is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life…to a small group of persons."  *Shields*,

55 F.4th at 829 (quoting Restatement (Second) of Torts, § 652D cmt. a).[6]  Thus, even Defendant's

alleged disclosure to a small group of data aggregators and appenders, AC ¶ 50, which was not to

"the public at large nor someone likely to widely communicate [his information]," cannot allege

"anything close to the required publicity element."  *Shields*, 55 F.4th at 829; *see also Cooper v.*

*US Dominion, Inc*., No. 22-1361, 2023 WL 8613526, at *5 (10th Cir. Dec. 13, 2023) (stating that

"the publicity element 'means the information is conveyed 'to the public at large, or to so many

persons that the matter must be regarded as substantially certain to become one of public

knowledge,'" and rejecting similarity to public disclosure of private facts because "there is no

allegation that the publication disseminated plaintiffs' names or addresses to the public.").

Plaintiff's reliance on *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021) is also

misplaced.  Plaintiff tries to pivot to an unpled intrusion upon privacy analogue but *Shields*

forecloses this effort too.[7]  Opp. at 10.  There, the Tenth Circuit rejected a similarly ill-founded

effort to "briefly link" plaintiff's claim to intrusion upon privacy finding that plaintiff had failed

to allege facts that defendant had ever "intruded her 'private solitude.'"  *Shields*, 55 F.4th at 829.

The Amended Complaint is likewise defective.  At most, Plaintiff has alleged that "TEN, through

list broker NextMark, offers to provide renters access to the mailing list titled 'The Economist

Mailing List.'" AC ¶ 2; *id.* Ex. A.  But the Amended Complaint and Opposition contain nothing

---

[6] Plaintiff tries to compare his alleged injury to *TransUnion LLC*, Opp. at 8, but ignores that in *TransUnion LLC*, the court did not find just any information disclosure sufficient to confer Article III standing, but rather, disclosure of false information which it deemed analogous to defamation. 594 U.S. at 433.  Plaintiff has not alleged that the information disclosed about him was false or slanderous.

[7] Other courts have also rejected intrusion upon seclusion claims based on the use of a plaintiff's address in marketing mailers, because such "conduct is not an egregious breach of social norms, but routine commercial behavior."  *See, e.g., Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992, 125 Cal.Rptr.3d 260 (Cal. Ct. App. 2011).

about any particular *intrusion* upon Plaintiff's solitude. All of his other "facts" about third-party disclosure of *his* information are vague speculation and insufficient to actually plead intrusion.[8]

Continuing his flawed bid to conjure Article III standing, Plaintiff looks to the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") and the Michigan Preservation of Personal Privacy Act, MCL - Act 378 of 1988 ("VRPA"). But these statutes are not comparable to the NISNPIA. The NISNPIA is a *notice* statute. U.C.A. § 13-37-201 (entitled) "Required Disclosure").[9] Its primary purpose is to require notice. As Rep. Aagard explained, "**The purpose of this Bill…[is] just to provide notice** to a consumer that their information is gonna be sold…" Utah State House of Rep. 2003 Gen. Session, Day 12, H.B. 0040S01 (Jan. 29, 2003) at -57:14 to -57:05- (emphasis added), a*vailable at* https://le.utah.gov/av/floorArchive.jsp?markerID=12385 ("H.B. 0040S01 Legislative History"); *see also* Mot. n. 3. By contrast, the VPPA and the VRPA focus on *disclosure*. The first substantive part of the VPPA creates liability for a video tape service provider who "knowingly discloses, to any person, personally identifiable information concerning any consumer."[10] 18 U.S.C. § 2710(b)(1). While the VPPA provides an exception for "informed, written consent," 18 U.S.C. § 2710(b)(2)(B), that is a carve-out from the statute's core purpose of barring disclosure. Accordingly, that certain out-of-jurisdiction courts have found these statutes, which focus on disclosure—not notice—akin to the common law tort of invasion of privacy

---

[8] Even Plaintiff's cursory allegation that he received junk mail does not help plead intrusion. AC ¶ 2. In *Shields*, the plaintiff had alleged that she received mail that violated the FDCPA, but despite these allegations about unsolicited mailings, the court still concluded that she had not alleged that defendant had "intruded her 'private solitude.'" 55 F.4th at 829.

[9] Plaintiff himself acknowledges this, arguing that "Defendant failed to provide Plaintiff the notice specified in Section 13-37-201…" Opp. at 14.

[10] Similarly, for the Michigan VRPA, the first section bars disclosures of information while the second section sets forth limited exceptions, including an exception for where the customer has provided "written permission." Mich. Comp. Laws Ann. 445.1712(2); *id.* 445.1713(3)(a).

sufficient for Article III standing is of no moment when examining the NISNPIA and its purely informational notice requirement.

Under binding Tenth Circuit precedent, a mere lack of notice is not enough for standing. In *Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022), the Tenth Circuit dismissed plaintiff's claim for lack of Article III standing, because even though she "had a regulatory right to the information" sought, "she ha[d] not demonstrated that the defendants' failure to provide that information caused her to suffer an injury in fact." *Id.* at 881. While Plaintiff argues for the first time in his Opposition that he was deprived of the option to forgo purchasing Plaintiff's goods, Opp. at 13, Plaintiff does not claim that had he received a NISNPIA notice, he would not have subscribed to *The Economist*. Plaintiff cannot allege harm from the lack of notice and this informational injury does not establish standing. *See TransUnion LLC*, 594 U.S. at 442.

**B.    This Case Cannot Be Brought as a Class Action.**

It is undisputed that the NISNPIA prohibits class actions. U.C.A. § 13-37-203(3) ("A person may *not* bring a class action under this chapter."). Plaintiff insists that this case can nonetheless be brought as a class action in federal court. He is wrong. The non-binding decision in *Curry v. Mrs. Fields*, No. 2:22-cv-00651-JNP-DBP, 2023 WL 6318108 (D. Utah Sept. 28, 2023) erroneously characterizes the NISNPIA class action bar as not substantive. The crux of its analysis was that "surgical removal of the presumptively procedural class-action bar leaves the rights and remedies otherwise provided by the Act totally intact." *Id.* at *6. That reasoning ignores *Shady Grove* which requires a court to evaluate "whether the state law actually is part of a State's framework of substantive rights or remedies." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 419 (2010) (Stevens, J. concurring). *See* Mot. at 9 n.5.

It is simply incorrect that excising NISNPIA's class action bar does not "effectively abridge[], enlarge[], or modif[y] a state-created right or remedy." *Shady Grove,* 559 U.S. at 422-

23.  In *Murtagh v. Bed Bath & Beyond Inc.*, a case assessing a similar class action bar in a Colorado consumer statute, the court reasoned that "allowing private class actions under the CCPA, where no such actions are contemplated either by private individuals, the Attorney General, or district attorneys, would logically 'enlarge or modify' the substantive rights or remedies conferred under the CCPA."  No. 19-CV-03487-CMA-NYW, 2020 WL 4195126, at *7 (D. Colo. July 3, 2020), *report and recommendation adopted,* No. 19-CV-03487-CMA-NYW, 2020 WL 4193553 (D. Colo. July 21, 2020).  To this point, Rep. Aagard's explanation of the limitations on the NISNPIA's penalties—which Plaintiff dismisses out-of-hand—is on point.   Rep. Aagard stated that he "purposely limited the penalties just so, to avoid, to take care of any unintended consequences." H.B. 0040S01 Legislative History at -1:00:26 to -59:48; Mot. at 9.  That statement strikes at the heart of the NISNPIA's "Liability" section in which both the $500 penalty and the class action bar appear, underscoring the broader statutory framework designed to avoid potentially ruinous liabilities that respectfully the *Curry* decision does not take into account.  Underscoring that the NISNPIA class action bar "was not merely intended by the state legislature to function as a procedural rule to govern class actions"—unlike the bar in *Shady Grove*—the NISNPIA's class action bar does not apply generally to all claims but exclusively to NISNPIA claims.  *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2015 WL 8479746, at *4 (D. Colo. Dec. 10, 2015) (applying *Shady Grove* analysis to Colorado consumer protection statute with class action bar) (citation omitted).

Because the NISNPIA class action bar is substantive and intertwined with the statute's rights and remedies, this action cannot be maintained as a class action and must be dismissed.

## CONCLUSION

Defendant respectfully requests that the Amended Complaint be dismissed with prejudice.

Dated: July 29, 2024.                      Respectfully submitted,

                                            */s/ Milo Steven Marsden*

                                           Milo Steven Marsden (Utah State Bar No. 4879)
                                           Maryann Bauhs (Utah State Bar No. 17196)
                                           **DORSEY & WHITNEY LLP**
                                           111 South Main Street, Suite 2100
                                           Salt Lake City, UT  84111
                                           Telephone: (801) 933-7360
                                           Email: marsden.steve@dorsey.com
                                                       bauhs.maryann@dorsey.com

                                           Sharon L. Schneier (*pro hac vice*)
                                           Nimra H. Azmi (*pro hac vice*)
                                           **DAVIS WRIGHT TREMAINE LLP**
                                           1251 Avenue of the Americas, 21st Floor
                                           New York, NY 10020-1104
                                           Tel:     (212) 489-8230
                                           Email: sharonschneier@dwt.com
                                                       nimraazmi@dwt.com

                                           Sean Sullivan (*pro hac vice*)
                                           865 South Figueroa Street, Suite 2400
                                           Los Angeles, CA 90017-2566
                                           Tel.: (213) 633-8644
                                           Email: seansullivan@dwt.com

4882-5422-7156\1